UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT HENRY VANLEEUWEN,<br><br>  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No.  1:21-cv-00963-ADA-HBK<br><br>FINDINGS AND RECOMMENDATIONS  TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMAND CASE TO COMMISSIONER[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No.  13) |

Kent Henry Vanleeuwen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 13-15). For the reasons set forth more fully below, the undersigned recommends the district court grant Plaintiff's motion for summary judgment and remand for further administrative proceedings.

/////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

# I. JURISDICTION

Plaintiff filed for supplemental security income on July 31, 2017, alleging a disability onset date of May 15, 2017. (AR 199-207). Benefits were denied initially (AR 101-05) and upon reconsideration (AR 108-12). A hearing was conducted before Administrative Law Judge Cynthia Hale ("ALJ") on January 6, 2020, and a subsequent hearing was held on April 15, 2020. (AR 47-75). Plaintiff was represented by counsel at the second hearing, and testified at the hearing. (*Id.*). On September 17, 2020, the ALJ issued an unfavorable decision (AR 12-31), and on April 29, 2021, the Appeals Council denied review. (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 53 years old at the time of the second hearing. (*See* AR 236). He completed the eleventh grade and attended special education classes. (AR 230). Plaintiff has no past relevant work history. (AR 24, 229). Plaintiff testified that he could no longer work because of his medications. (AR 60). He reported fatigue from a heart condition, which required placement of a pacemaker in 2018. (AR 61-62). Plaintiff testified that he naps for approximately three hours per day, spread out throughout the day. (AR 63). He takes psychotropic medications, and testified that they help control his anxiety and depression. (AR 64-65). Plaintiff reported that he can sit for 20 minutes at a time, stand for 15-20 minutes before he needs to sit down, walk for 15 minutes before he gets tired, and lift 5 to 10 pounds occasionally. (AR 69-70).

# III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2017, the application date.  (AR 17).  At step two, the ALJ found that Plaintiff has the following severe impairments: history of bradycardia and syncope requiring pacemaker placement, mood disorder, and anxiety.  (AR 18).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 19).  The ALJ then found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except he would need to be able to alternate between standing and sitting every 30 minutes for a brief position change while continuing to work at the work station.  He is limited to simple, routine, or repetitive tasks with no more than occasional interaction with co-workers, supervisors, and the general public, with no tandem job tasks.

(AR 20).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 24).  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including routing clerk, marker, and office helper.  (AR 25).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 31, 2017, the date the application was filed.  (AR 25).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issue for this Court's review: whether the ALJ properly weighed the medical opinion evidence.  (Doc. No. 13 at 2-5).

## VII.  DISCUSSION

### A. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical

6

opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In August 2017, Dr. Olaya opined that Plaintiff "is capable of understanding, remembering, and carrying out simple one to two step (unskilled) tasks. [Plaintiff] is able to maintain concentration, persistence and pace throughout a normal workday/workweek as related to simple/unskilled tasks. [Plaintiff] is able to interact adequately with coworkers and supervisors but may have difficulty dealing with the demands of general public contact. [Plaintiff] is able to make adjustments and avoid hazards in a low demand work setting consistent [with] simple work tasks." (AR 79). In December 2017, Dr. Brode affirmed Dr. Olaya's opinion. (AR 90, 94). The ALJ analyzed these opinions jointly, and found them only "partially persuasive" for the following reasons:

> Both supported their conclusion by citing to evidence of record, and while precluding the claimant for interaction with the general public is not consistent based on the overall medical evidence of record, the remaining limitations are generally consistent with the medical evidence of record. [Plaintiff] can perform simple, routine, repetitive tasks. [Plaintiff] was fair insight and judgment, intact cognitive functioning, and a linear, logical, goal directed, clear, and coherent thought process. He can have occasional interaction with co-workers, supervisors, and the general public, with no tandem job tasks."

7

(AR 23 (internal citation omitted)).

Plaintiff argues that "[a]lthough the ALJ appears to have largely credited the opinions of Dr. Olaya and Brode, the ALJ failed to fully incorporate their opinions into the residual functional capacity. In particular, the ALJ restricted Plaintiff to simple, routine, and repetitive tasks, but failed to include a restriction to one to two-step tasks." (Doc. No. 13 at 4). Defendant contends it was "reasonable" for the ALJ not to adopt the one to two-step task limitation in the RFC for several reasons. (Doc. No. 14 at 6). First, Defendant cites a separate portion of the disability determination explanation, at both the initial and reconsideration levels, entitled "assessment of vocational factors," that indicates "[b]ased o the seven strength factors of the physical RFC, Plaintiff's "maximum sustained work capacity" was "simple work and work [with] moderate contact [with] the public." (AR 83, 98). However, a plain reading of the "vocational assessment" section cited by Defendant reveals that it is not part of the medical portion of the disability determination. (*Id*. (noting that the medical portion of the disability determination was "complete" and signed by Dr. Olaya and Dr. Brode, respectively, before the adjudicator proceeded to the "vocational assessment")). Thus, while Defendant is correct that portion of the agency disability determination is consistent with the ALJ's assessed RFC, it is of limited relevance in considering whether the ALJ properly considered the medical opinions.

Second, Defendant argues that the "ALJ noted the unskilled task and 'one to two' step task limitations, found them only partially persuasive, and concretely found: 'The claimant can perform simple, routine repetitive tasks.'" (Doc. No. 14 at 7). This argument misstates the ALJ's findings. As noted above, the ALJ explicitly found that both opinions were partially persuasive because they "[b]oth supported their conclusion by citing to evidence of record, and while precluding the claimant from interaction with the general public is not consistent based on the overall medical evidence of record, the remaining limitations are generally consistent with the medical evidence of record." (AR 23). A plain reading of the ALJ decision indicates that while she found the assessed limitation on Plaintiff's ability to interact with the general public less persuasive, the "remaining limitations," which would presumably include the limitation to one to two-step tasks, were found to be "generally consistent with the medical evidence of record."

8

1  (*Id*.).

2  Third, Defendant notes that "the paragraph where Dr. Olaya used the term 'one to two
3  step' tasks further supports this was not an assessment of Plaintiff's maximum capacity. The first
4  sentence of that paragraph states Plaintiff 'can do unskilled tasks," the last sentence states
5  Plaintiff can perform 'simple work tasks,' and the sentence with the 'one to two step' task
6  language equates that to 'unskilled' work." (Doc. No. 14 at 7 (citing AR 79)). Thus, according to
7  Defendant, when "read as a whole" it was reasonable for the ALJ to find the assessments of Dr.
8  Olaya and Dr. Brode supported a limitation to simple, routine, and repetitive tasks. (*Id*.).
9  Similarly, Defendant argues that the RFC was properly assessed by the ALJ based on the
10  longitudinal record, including the opinion of state agency consultant Arthur Lewy, Ph.D., who
11  found no mental work limitations. (Doc. No. 14 at 5-8 (citing AR 558)).

12  Defendant is correct that an ALJ's RFC is an administrative finding based on all the
13  relevant evidence in the record, and need only be consistent with the relevant assessed limitations
14  and not identical to them. (Doc. No. 14 at 5); *see Turner v. Comm'r of Soc. Sec*., 613, F.3d 1217,
15  1222-23 (9th Cir. 2010); *Stubbs*, 539 F.3d 1173-74 (finding harmless error when the ALJ's
16  hypothetical properly incorporated limitations consistent with those identified in medical
17  testimony). However, regardless of whether the assessed RFC properly limited Plaintiff to
18  simple, routine, and repetitive work based on the overall evidence of record, the issue remains as
19  to whether the ALJ properly considered Dr. Olaya and Dr. Brodie's opinion that Plaintiff was
20  capable of carrying out simple one to two step tasks. *See Brown-Hunter v. Colvin*, 806 F.3d at
21  495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the
22  grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ
23  must provide some reasoning in order for [the court] to meaningfully determine whether the
24  ALJ's conclusions were supported by substantial evidence."); *see* SSR 96-8p ("If the RFC
25  assessment conflicts with an opinion from a medical source, the adjudicator must explain why the
26  opinion was not adopted."). Here the ALJ failed to either provide reasons, supported by
27  substantial evidence, to reject the limitation to simple one or two step tasks, or to properly
28  incorporate the limitations into the assessed RFC. *See Robbins v. Soc. Sec. Admin*., 466 F.3d 880,

886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"); *Byrd v. Colvin*, 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the] opinion, but the RFC failed to take into account all of the limitations identified by [the doctor], and the ALJ failed to explain why she did not include the limitations in the RFC.  As a result, the ALJ erred in formulating the RFC."). This constitutes error.

Further, the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, in response to the hypothetical propounded by the ALJ at the hearing, the vocational expert testified that an individual with Plaintiff's age, education, work experience, and the RFC outlined above, including the limitation to simple, routine, and repetitive work tasks, can perform the requirements of routing clerk, marker, and office helper.  (AR 25, 73).  However, while the ALJ correctly indicates in the decision that these jobs are "unskilled," as noted by Plaintiff, they also all require a DOT reasoning level of 2.  DOT 222.687-022, *available at* 1991 WL 672133 (routing clerk occupation requires reasoning level of 2); DOT 902.687-126, *available at* 1991 WL 687992 (marker occupation requires reasoning level of 2); DOT 239.567-010, *available at* 1991 WL 672232 (office helper occupation requires reasoning level of 2).  It is well-settled in the Ninth Circuit that an individual restricted to one to two-step tasks cannot perform occupations requiring a Dictionary of Occupational Titles ("DOT") reasoning of 2.  *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"); *Wells v. Colvin*, 2016 WL 4744668, at *8 (E.D. Cal. Sept. 13, 2016) (remanding where ALJ gave significant weight to doctor's opinion that Plaintiff could "sustain simple one-two step repetitive tasks," but did not adopt this limitation in the RFC, instead limiting Plaintiff to "simple, routine, and repetitive tasks."); *Wilson v. Colvin*, 2017 WL 1861839, at *6 (N.D. Cal. May 9, 2017) ("*Rounds* shows that a significant distinction exists between Level One and Level Two Reasoning jobs, with Level One jobs typically lining up

with the ability to perform one or two step job instructions."); *Cf. Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (individual limited to simple, repetitive tasks has been found able to perform occupations requiring a DOT reasoning level of 2).

Thus, as noted by Plaintiff, "the legal error is harmful because, had the ALJ adopted the restriction to 1 to 2 step tasks, Plaintiff would not have been able to perform the occupations listed at step five of the sequential evaluation." (Doc. No. 13 at 5). Further, because there was no testimony from the vocational expert regarding a limitation to one to two-step tasks, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit this portion of Dr. Olaya and Dr. Brodie's opinions. *See Hill*, 698 F.3d at 1161 (when the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete . . . [disability] determination."). Based on the foregoing, the Court finds the ALJ erred by failing to properly reject the limitation to one to two-step tasks opined by Dr. Olaya and Dr. Brodie or incorporate it into the assessed RFC. On remand, the ALJ must reconsider Dr. Olaya and Dr. Brodie's opinions along with the relevant medical opinion evidence.

**B. Remedy**

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the undersigned recommends the case be remanded for further proceedings.

On remand, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional

11

testimony from medical experts. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

Plaintiff's Motion for Summary Judgment (Doc. No. 13) be GRANTED. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   September 13, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE